# United States Court of Appeals

## For the Eighth Circuit

_____

No. 12-3093

_____

Moones Mellouli

*Petitioner*

v.

Eric H. Holder, Jr., Attorney General of the United States

*Respondent*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: February 13, 2013
Filed: July 9, 2013

_____

Before RILEY, Chief Judge, LOKEN and SHEPHERD, Circuit Judges.

_____

LOKEN, Circuit Judge.

Section 237(a) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a), lists classes of aliens lawfully present in this country who are removable (deportable) from the United States. One subsection provides:

> Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21), other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable.

8 U.S.C. § 1227(a)(2)(B)(i) (emphasis added). Moones Mellouli, a citizen of Tunisia and a lawful permanent resident of the United States, petitions for review of an order of the Board of Immigration Appeals ("BIA") that he is removable because his July 2010 conviction for violating a Kansas drug paraphernalia statute was a conviction "relating to a controlled substance" within the meaning of § 1227(a)(2)(B)(i). Mellouli argues on appeal, as he did to the BIA, that he is not removable because the state court record of conviction does not identify the controlled substance underlying his state paraphernalia conviction, and therefore the government failed to prove that the conviction related to a *federal* controlled substance, as § 1227(a)(2)(B)(i) requires. We have jurisdiction to review this issue of law. See Bobadilla v. Holder, 679 F.3d 1052, 1053 (8th Cir. 2012), applying 8 U.S.C. § 1252(a)(2)(D). Although the question is not free from doubt, compare Moncrieffe v. Holder, 133 S. Ct. 1678 (2013), with Nijhawan v. Holder, 557 U.S. 29 (2009), we join our sister circuits that have upheld the BIA's application of the "relates to" provision in § 1227(a)(2)(B)(i) and deny the petition for review.

## I. The Statutory Landscape

The government has the burden to establish removability by clear and convincing evidence. See 8 U.S.C. § 1229a(c)(3)(A); Bobadilla, 679 F.3d at 1058. The primary issues presented by this appeal are whether the government must prove that a specific controlled substance defined in 21 U.S.C. § 802 was the basis for a state drug paraphernalia conviction, and if so, what evidence the government may use

to prove that aspect of the conviction. In our view, proper resolution of these issues requires an understanding of a complex federal and state statutory universe.

Congress in the Controlled Substances Act of 1970 established five lengthy schedules of controlled substances, see 21 U.S.C. § 812, and defined controlled substance as meaning a drug or precursor included in those schedules, see 21 U.S.C. § 802(6), the statute cross-referenced in 8 U.S.C. § 1227(a)(2)(B)(i). That same year, the National Conference of Commissioners on Uniform State Laws approved the Uniform Controlled Substances Act, describing as its purpose:

> The 1970 Uniform Act was designed to complement the federal Controlled Substances Act, which was enacted in 1970. . . . This Uniform Act was drafted to maintain uniformity between the laws of the several States and those of the federal government. It has been designed to complement the federal law and provide an interlocking trellis of federal and state law to enable government at all levels to control more effectively the drug abuse problem.

Unif. Controlled Substances Act (amended 1994), 9 U.L.A. 5, Pt. II. The Uniform Act has the same five schedules as 21 U.S.C. § 812. Nearly all States have adopted the Uniform Act. Some States added a small number of substances not listed on the federal schedules. In addition, not every State amended its schedules to adopt revised versions of the Uniform Act in 1990 and 1994, or to incorporate changes to the federal schedules over the years. Thus, the drugs listed on a State's schedules may not "map perfectly" with the federal schedules. In re Huerta-Flores, A092-444-014, 2010 WL 5808899 (BIA Aug. 27, 2010) (unpublished), quoting Luu-Le v. INS, 224 F.3d 911, 915 (9th Cir. 2000). In that decision, the BIA noted that the Arizona and federal schedules at issue were identical except for the continued listing on Arizona's Schedule I of two drugs whose federal listing had expired.

Kansas adopted the Uniform Act in 1972. Kansas Schedules I-V, now appearing in Kan. Stat. Ann. §§ 65-4105 to 65-4113, list, for each controlled substance that is also a controlled substance under federal law, the corresponding code number from the federal schedules. Of the hundreds of substances currently listed, less than a handful have no federal code number. A controlled substance for purposes of Kansas criminal drug offenses means a substance listed in the Kansas Schedules I-V. Kan. Stat. Ann. § 21-5701(a). Thus, there is little more than a "theoretical possibility" that a conviction for a controlled substance offense under Kansas law will *not* involve a controlled substance as defined in 21 U.S.C. § 802. Gonzalez v. Duenas-Alvarez, 549 U.S. 183, 193 (2007).

At issue in this case is a Kansas drug paraphernalia conviction. These statutes, too, have a relevant history. In 1979, concerned that the availability of drug paraphernalia "has reached epidemic levels," the Drug Enforcement Administration at the request of the President's Domestic Policy Council "prepared the Model Drug Paraphernalia Act . . . as an amendment to the Uniform Controlled Substances Act."[1] Kansas adopted this Model Act in 1981; Mellouli was convicted of violating an amended version of that statute. Because many States in enacting drug paraphernalia criminal offenses have adopted the Model Act, the question whether a conviction for a particular State's drug paraphernalia statute "relates to" a federal controlled substance is not likely to involve relevant differences in state statutory language. See Luu-Le, 224 F.3d at 915 (Arizona Drug Paraphernalia law); Bermudez v. Holder, 586 F.3d 1167, 1168-69 (9th Cir. 2009) (Hawaii); Estrada v. Holder, 560 F.3d 1039, 1042 (9th Cir. 2009) (California) United States v. Oseguera-Madrigal, 700 F.3d 1196, 1198-99 (9th Cir. 2012) (Washington).

---

[1] Thomas Regnier, "Civilizing" Drug Paraphernalia Policy: Preserving Our Free Speech and Due Process Rights While Protecting Children, 14 N.Y.U. J. Legis. & Pub. Pol'y 115, 124 (2011) (quotations omitted).

## II. The BIA's Decision

Following Mellouli's April 2010 arrest for driving under the influence of alcohol, detention center deputies discovered four orange tablets in his sock bearing the inscription, "M Aphet Salts 30 mg." Mellouli admitted the tablets were Adderall, a drug listed on both the Kansas and federal controlled substance schedules. He was charged with the level 6 felony of "trafficking in contraband in a jail." On July 13, he pleaded guilty to the lesser offense charged in an amended complaint, misdemeanor possession of drug paraphernalia in violation of Kan. Stat. Ann. § 21-36a09(b), now recodified at § 21-5709(b). The amended complaint did not identify the controlled substance Mellouli stored in the paraphernalia, his sock.[2]

In Matter of Paulus, 11 I. & N. Dec. 274, 276 (BIA 1965), construing prior federal controlled substance and immigration laws, the BIA concluded that the alien was not deportable under then § 241(a)(11) of the INA[3] because his conviction for violating the Health and Safety Code of California "could have been for an offer to sell a substance which though a narcotic under California law is not a narcotic drug under federal laws [and therefore] we cannot say that the Service has borne its burden

---

[2]The statute provides, in relevant part: "It shall be unlawful for any person to use or possess with intent to use any drug paraphernalia to . . . (2) store, contain, conceal, inject, ingest, inhale or otherwise introduce a controlled substance into the human body." It seems surprising to call a sock "drug paraphernalia," but using a sock to store and conceal a controlled substance falls within the statute's literal prohibition. Pleading guilty to a reduced paraphernalia offense after being charged with a serious controlled substance offense was also the fact pattern in Oseguera-Madrigal, 700 F.3d at 1198, so this type of paraphernalia conviction may be neither uncommon nor unfairly punitive.

[3]This statute made deportable an alien who "has been convicted of a violation of . . . any law or regulation relating to the illicit possession of or traffic in narcotic drugs or marihuana." Paulus, 11 I. & N. Dec. at 275, quoting former 8 U.S.C. § 1251(a)(11).

of establishing that [the alien] has been convicted of a violation of a law relating to narcotic drugs."

In this case, Mellouli argued to the BIA, <u>Paulus</u> is controlling BIA authority, so a state drug paraphernalia conviction does not fall within § 1227(a)(2)(B)(i) unless the paraphernalia was connected to a federal controlled substance. Because the Kansas schedules include a few controlled substances not on the federal schedules, such as jimson weed, there is a possibility, however remote, that a Kansas drug paraphernalia conviction did not involve use in connection with a federal controlled substance. Mellouli further argued that this evidentiary issue must be decided using the "categorical" and "modified categorical" analysis applied by the Supreme Court in <u>Taylor v. United States</u>, 495 U.S. 575, 599-602 (1990), and <u>Shepard v. United States</u>, 544 U.S. 13, 26 (2005), criminal cases interpreting the Armed Career Criminal Act, 18 U.S.C. § 924(e), an analysis often but not uniformly applied in interpreting various provisions of the INA. Here, the Kansas statutes and the only documents reflecting his Kansas conviction that may be considered in applying the modified categorical approach did not identify a particular controlled substance. Therefore, Mellouli's argument concluded, the government failed to prove by clear and convincing evidence that he was convicted of an offense "relating to a controlled substance (as defined in section 802 of Title 21)."

Adhering to its prior decision in <u>Matter of Martinez Espinoza</u>, 25 I. & N. Dec. 118 (BIA 2009), the BIA rejected the initial premise underlying this complex argument -- that a drug paraphernalia conviction is not "related to" a federal controlled substance within the meaning of § 1227(a)(2)(B)(i) unless the conviction identified a particular controlled substance with which the paraphernalia was used. As the BIA explained in <u>Martinez Espinoza</u>:

> we have long drawn a distinction between crimes involving the possession or distribution of a *particular* drug and those involving other

-6-

conduct associated with the drug trade in general. Thus, the requirement of a correspondence between the Federal and State controlled substance schedules, embraced by Matter of Paulus . . . for cases involving the possession of particular substances, has never been extended to other contexts by the Board. For example, in Matter of Martinez-Gomez, 14 I&N Dec. 104, 105 (BIA 1972), we held that an alien's California conviction for opening or maintaining a place for the purpose of unlawfully selling, giving away, or using any narcotic was a violation of a law relating to illicit traffic in narcotic drugs under former section 241(a)(11) of the Act . . . even though the California statute required no showing that only *Federal* narcotic drugs were sold or used in the place maintained, because the "primary purpose" of the law was "to eliminate or control" traffic in narcotics.

The common-sense approach of Matter of Martinez-Gomez accords with the broad "relating to" language of current law and has largely been embraced by the courts.

Id. at 121-22, citing Luu-Le, 224 F.3d at 915, and Desai v. Mukasey, 520 F.3d 762, 764-65 (7th Cir. 2008). Relying on Martinez Espinoza, the BIA concluded that Mellouli's "conviction for possession of drug paraphernalia involves drug trade in general and, thus, is covered under [8 U.S.C. § 1227(a)(2)(B)(i)]."

### III. Discussion

On appeal, Mellouli does not challenge prior decisions that state drug paraphernalia statutes may constitute laws "relating to a controlled substance" within the meaning of § 1227(a)(2)(B)(i). See Barma v. Holder, 640 F.3d 749, 751 (7th Cir. 2011); Alvarez Acosta v. U.S. Att'y Gen., 524 F.3d 1191, 1195-96 (11th Cir. 2008); Escobar Barraza v. Mukasey, 519 F.3d 388, 391-92 (7th Cir. 2008); Luu-Le, 224 F.3d at 914-15. Given the extensive federal involvement in preparing and urging States to enact the Model Drug Paraphernalia Act as part of "an interlocking trellis of

federal and state law . . . to control more effectively the drug abuse problem," we have no doubt that these state laws "relate to" federal control of illicit drugs.

Mellouli more narrowly argues (i) the BIA arbitrarily and capriciously ignored what should have been its own controlling decision in Paulus; (ii) the record-of-conviction documents that may be considered under the Supreme Court's modified categorical approach did not identify a federal controlled substance; (iii) the BIA erred in considering other documents that referred to the controlled substance in his sock as Adderall; and therefore (iv) the government failed to prove he is removable under § 1227(a)(2)(B)(i). We reject this contention for three reasons.

First. In Martinez Espinoza, the BIA concluded that a state court drug paraphernalia conviction "relates to" a federal controlled substance because it is a crime "involving other conduct associated with the drug trade in general." 25 I. & N. Dec. at 121. We "must defer" to this interpretation of an ambiguous statute if it is neither arbitrary nor manifestly unreasonable. Popescu-Mateffy v. Holder, 678 F.3d 612, 615 (8th Cir. 2012), citing Chevron U.S.A. Inc. v. Nat'l Res. Def. Council, Inc., 467 U.S. 837 (1984). The BIA's conclusion is a reasonable interpretation of the term "relating to," a term that reflects congressional intent to broaden the reach of the removal provision to include state offenses having "a logical or causal connection" to federal controlled substances. See Webster's Third New International Dictionary 1916 (1961).

While the "map" may be imperfect, there is nearly a complete overlap between the definition of controlled substance in 21 U.S.C. § 802 and in the statutes of States such as Kansas that adopted the Uniform Controlled Substances Act. It was therefore reasonable for the BIA to conclude that any drug paraphernalia conviction in these States was, categorically, a violation of a law "relating to a controlled substance" within the meaning of 8 U.S.C. § 1227(a)(2)(B)(i). Accord Luu-Le, 224 F.3d at 915. "If Congress wanted a one-to-one correspondence between the state laws and the

federal [schedules], it would have used a word like 'involving' instead of 'relating to.'" Desai, 520 F.3d at 766 (concluding that state statute prohibiting distribution of "look-alike" drugs was related to federal controlled substances; the "look-alike" substance was illegal because of its relation to a federally scheduled substance).

As the BIA correctly concluded that a conviction for violating the Kansas paraphernalia statute is, categorically, related to a controlled substance within the meaning of § 1227(a)(2)(B)(i), use of the modified categorical approach as urged by Mellouli is unnecessary. "All the modified approach adds is a mechanism for [comparing the elements of the state offense with the generic federal offense] when a statute lists multiple, alternative elements, and so effectively creates 'several different crimes.'" Descamps v. United States, No. 11-9540, slip op. at 8 (U.S. June 20, 2013), quoting Nijhawan, 557 U.S. at 41.

Second. We reject Mellouli's premise that Paulus was controlling agency authority the BIA arbitrarily ignored. While the BIA has not explicitly overruled Paulus, that case involved pre-1970 controlled substance and INA statutes and was ignored by the BIA in Huerta-Flores, where the BIA concluded that a state drug conspiracy conviction is a "categorically removable offense" when the state statute has "a list of narcotic drugs that is substantially identical to the federal one, and indeed was drafted with the obvious intent to match precisely with the federal schedules." 2010 WL 5808899 (unpublished). Given the close relationship between drug possession and drug conspiracy offenses, Huerta-Flores strongly signals that the BIA does not consider Paulus controlling in the post-1970 statutory era.

Third. The government's burden of proof included the need to establish by clear and convincing evidence that Mellouli's drug paraphernalia conviction did not fall within the exception in § 1227(a)(2)(B)(i) for "a single offense involving possession for one's own use of 30 grams or less of marijuana." To meet this burden, the government submitted documents *outside* the record of conviction, namely, the

original Kansas complaint, to which Mellouli did not plead guilty, and a probable-cause affidavit. These documents established that his drug paraphernalia conviction did not implicate the personal use exception because Mellouli used his sock to conceal Adderall, a federal Schedule II controlled substance, not marijuana. Employing the "circumstance specific" approach adopted in <u>Martinez Espinoza</u>, 25 I. & N. Dec. at 123-24, the BIA concluded that the personal use exception did not apply because these documents established that Mellouli's paraphernalia conviction was connected to Adderall. On appeal, Mellouli does not challenge the BIA's conclusion that the exception did not apply. Rather, he argues that it was error to admit and rely on evidence outside the record of conviction.

In <u>Nijhawan</u>, the Supreme Court considered an INA provision defining "aggravated felony" to include "an offense that . . . involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." 8 U.S.C. § 1101(a)(43)(M)(i). The Court concluded that this monetary threshold was a specific circumstance underlying the conviction, not an element of the crime, and therefore immigration judges may consider evidence outside the record of conviction to determine whether the threshold was satisfied. 557 U.S. at 41-42. In our view, the BIA properly applied this "circumstance specific" approach in determining that Mellouli's conviction fell outside the personal use exception. As the BIA explained in a subsequent decision:

> The language of the [personal use exception] is exceedingly narrow and fact-specific. It refers not to a common generic crime but rather to a specific type of conduct (possession for one's own use) committed on a specific number of occasions (a "single" offense) and involving a specific quantity (30 grams or less) of a specific substance (marijuana). Read in its most natural sense, this narrow language calls for what the Supreme Court has referred to as a "circumstance-specific" inquiry, that is, an inquiry into the nature of the alien's conduct.

Matter of Davey, 26 I. & N. Dec. 37, 39 (BIA 2012) (citations omitted). We agree. "Locating this exception in the INA proper suggests an intent to have the relevant facts found in immigration proceedings." Moncrieffe, 133 S. Ct. at 1691.

Mellouli argues, in effect, that this evidence was inadmissible until the government *first* proved that his conviction related to a federal controlled substance with record-of-conviction documents permitted by Shepard. But this ignores the need for efficient administrative proceedings. The government must prove its entire case in one submission, not by some artificial, bifurcated procedure. The government's case must include proof that the personal use exception does not apply. Evidence related to that issue is therefore admissible at the outset of the proceeding.

Mellouli more or less concedes that circumstance-specific evidence he concealed Adderall would be admissible to prove the personal use exception did not apply. His real objection is that the BIA may not rely on this type of evidence in deciding that his paraphernalia conviction was "related to" a federal controlled substance because it *in fact* involved a federal controlled substance. This objection is based upon categorical and modified categorical approaches that have generated persistent uncertainty and confusion; it therefore raises an interesting and potentially difficult evidentiary issue.[4] But this case does not present the question because (i) the BIA did not use circumstance-specific evidence for this purpose, and (ii) we have affirmed the BIA's categorical determination that Mellouli's drug paraphernalia conviction was within § 1227(a)(2)(B)(i), without regard to whether the paraphernalia was used in connection with a federally scheduled drug. The general rule that we do

---

[4]"[W]hen deciding how to classify convictions under criteria that go beyond the criminal charge -- such as the amount of the victim's loss, or whether the crime is one of 'moral turpitude,' the agency has the discretion to consider evidence beyond the charging papers and judgment of conviction." Ali v. Mukasey, 521 F.3d 737, 743 (7th Cir. 2008), cert. denied, 129 S. Ct. 2853 (2009); accord Matter of Silva-Trevino, 24 I. & N. Dec. 687, 700-02 (A.G. 2008).

-11-

not decide academic questions is particularly wise in this situation, as we have no hint how the BIA would address this evidentiary issue in a case where the answer mattered to the ultimate issue of removability. Thus, we leave the issue for another day.

For the forgoing reasons, we deny the petition for review.

_____