# United States Court of Appeals
## For the First Circuit

No. 21-1973

UNITED STATES OF AMERICA,

Appellee,

v.

JASON D. BOUDREAU,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. John J. McConnell, Jr., U.S. District Judge]

Before

Barron, Chief Judge,
Lynch, Circuit Judge,
and Kelley, District Judge.[*]

Jeremy A. Pratt, with whom Jason D. Boudreau, pro se, was on supplemental brief, for appellant.
Lauren S. Zurier, Assistant United States Attorney, with whom Zachary A. Cunha, United States Attorney, was on brief, for appellee.

January 24, 2023

---

[*] Of the District of Massachusetts, sitting by designation.

**KELLEY, District Judge.** Jason D. Boudreau ("Boudreau") was indicted on 34 child pornography possession charges in the District of Rhode Island. Boudreau and the government reached a plea agreement under which he pled guilty to Counts 19 and 34 of the indictment, and the government dismissed the remaining 32 charges. In entering this plea agreement, Boudreau agreed to waive his rights to appeal his conviction and sentence. Despite executing this waiver, Boudreau now appeals various aspects of the proceedings below, including the calculation of the Sentencing Guidelines and the conditions of his life term of supervised release. Because Boudreau's waiver of appeal is valid and enforceable, we dismiss his appeal.

## I.    FACTUAL & PROCEDURAL BACKGROUND

We begin with a review of Boudreau's criminal history. In 2009, Boudreau pleaded nolo contendere to a charge of simple assault of an 11-year-old girl in Rhode Island state court. Although the charge was "simple assault," the facts underlying this conviction indicate that the crime was sexual in nature: Boudreau placed the child on his lap, unbuckled her belt, kissed her lips, and tried to place his tongue in her mouth. This conviction was originally "filed," with no punishment imposed, but was converted to a term of probation in 2010 after Boudreau failed to appear in court.

In 2012, Boudreau pleaded nolo contendere to a charge of second-degree child molestation of a seven-year-old family member in Rhode Island state court.  This offense involved kissing and feeling the child's intimate parts over her underwear.  The court sentenced Boudreau to eight years, two to be served in prison and six to be served on probation as a suspended sentence.

In 2014, Boudreau pleaded nolo contendere to a charge of possession of child pornography in Rhode Island state court.  The court sentenced him to a five-year suspended sentence with five years of probation.

We now turn to the facts of this case. In March 2015, a person using an IP address associated with Boudreau's residence uploaded a video of child pornography to a website called SendVid.com.  The National Center for Missing and Exploited Children alerted Rhode Island authorities to the upload of this video in April 2015.  Rhode Island authorities received information from Verizon connecting Boudreau's residential address to the video in September 2015.  In November 2015, authorities executed a search warrant at Boudreau's residence and seized electronic devices, including cell phones.  Boudreau acknowledged ownership of these devices at the time of the search.

Analysis of Boudreau's cell phone indicated that between August and November 2015, the phone had accessed 617 images of child pornography.  The phone's cache contained 677 images of

child pornography. The analysis indicated that on September 20, 2015 (the date which formed the basis for "Count 19," one of the two instant charges here), the phone had accessed 76 images of child pornography.

The District of Rhode Island issued an arrest warrant for Boudreau in December 2015. When Boudreau was arrested in Connecticut, authorities seized an additional cell phone from his person. The SD card of this phone contained over 100 additional images of child pornography as well as images of young girls in Boudreau's family.

A federal grand jury indicted Boudreau in February 2016 on 33 counts of access with intent to view child pornography, for images found on his devices at his residence. In June 2016, the grand jury returned a superseding indictment adding one count of possession of child pornography ("Count 34") to the original 33 counts, for the images found on his phone during his arrest.

In May 2018, Boudreau entered into a plea agreement under which he was to plead guilty to Counts 19 and 34 and the government would dismiss the remaining 32 counts. The parties agreed that the government would recommend a sentence within the Guidelines range and the parties further agreed to four sentencing enhancements that would apply to the calculation of the offense level. The plea agreement expressly contemplated the possibility that additional enhancements could apply, and the parties reserved

- 4 -

their rights to argue at sentencing as to the proper calculation of the guidelines.

The plea agreement also contained the following waiver of appeal clause:

> Defendant hereby waives Defendant's right to appeal the convictions and sentences imposed by the Court, if the sentences imposed by the Court are within or below the sentencing guideline[s] range determined by the Court. This agreement does not affect the rights or obligations of the United States as set forth in 18 U.S.C. § 3742(b), and the government retains its right to appeal any of the Court's sentencing determinations.

The district court conducted a change of plea hearing at which Boudreau was questioned about his understanding of the plea agreement and waiver of appeal. Under oath, Boudreau testified that he understood the terms of the agreement, including the waiver of appeal, that he had discussed the agreement with his attorney, and that he was fully satisfied with his attorney's performance. The district court did not, however, state as a part of the colloquy that Boudreau could not withdraw his plea of guilty if he was dissatisfied with the sentence he received, as required by Federal Rules of Criminal Procedure Rule 11(c)(3)(B).

The Probation Department prepared a Presentence Investigation Report ("PSR") that contained a detailed statement of facts supporting each application of a sentencing enhancement. The PSR further recommended that the four sentencing enhancements

that the parties had agreed to in the plea agreement should apply. The PSR also recommended the application of a five-point enhancement for a "pattern of activity involving the sexual abuse or exploitation of a minor" should apply to Boudreau's offense level, pursuant to U.S.S.G. § 2G2.2(b)(5).

At sentencing, the district judge calculated the Sentencing Guidelines as the PSR had recommended. The district judge determined that the base offense level was 18 and added each of the four enhancements the parties had agreed upon in the plea agreement: two-level increase for material depicting prepubescent minors; four-level increase for depiction of sadistic or masochistic conduct; two-level increase for use of a computer; and five-level increase for access to 600 or more images. The district court also applied the PSR's suggested five-level increase for a "pattern of activity involving the sexual abuse or exploitation of a minor" and a three-level decrease for Boudreau's acceptance of responsibility. This brought the offense level to 33. Neither party objected to the calculation of the offense level, including the application of the enhancements. The district court further determined that the criminal history score was 9 and the criminal history category was IV, resulting in a Sentencing Guidelines range of 188 to 235 months.

When imposing the sentence, the district court again asked Boudreau if he had assented to the appeal waiver in his plea

agreement, and Boudreau again indicated that he had. The district court imposed a sentence at the top of the Guidelines range of 235 months. Because this sentence fell within the Guidelines range, the appeal waiver Boudreau agreed to in his plea agreement applied. In explaining its sentence, the district court expressed concern that Boudreau's risk of recidivism was nearly 100 percent and cited his past instances of child abuse and child pornography possession in reaching this conclusion. The district court indicated that it would have imposed a harsher sentence if the Sentencing Guidelines range had been higher and stated that it needed to keep Boudreau "locked up as long as [it] can in order to protect the public from [Boudreau] based on [his] history."

The district court further imposed a sentence of a lifetime term of supervised release with several special conditions including a "suspicionless search" provision that would permit the Probation Officer to search Boudreau's property, including electronic devices, at any time, without a requirement of reasonable suspicion of a violation. Additionally, the court imposed a special condition restricting Boudreau's abilities to access devices capable of connecting to the internet and to interact with persons under the age of 18.

## II. DISCUSSION

Boudreau appeals his sentence on various procedural and substantive grounds. However, because Boudreau executed a waiver

- 7 -

of appeal in his plea agreement, we first assess whether Boudreau's waiver is valid and enforceable. If an appeal is subject to a waiver that is valid and enforceable, we will dismiss the appeal. See United States v. Morales-Arroyo, 854 F.3d 118, 121-22 (1st Cir. 2017).

We thus begin with Boudreau's challenge to the validity of his waiver of appeal. We identified a three-factor standard for validity in United States v. Teeter, 257 F.3d 14, 24-25 (1st Cir. 2001). First, the waiver must "comprise 'a clear statement' describing the waiver and specifying its scope." United States v. Morillo, 910 F.3d 1, 2 (1st Cir. 2018) (quoting Teeter, 257 F.3d at 24). Second, the "record must show that the judge's interrogation 'suffice[d] to ensure that the defendant freely and intelligently agreed to waive [his or] her right to appeal [his or] her forthcoming sentence.'" Id. (alterations in original) (quoting Teeter, 257 F.3d at 24). And third, denying a right to appeal must not "work a miscarriage of justice." Id. (quoting Teeter, 257 F.3d at 25).

Here, there is no argument on the first Teeter factor, as Boudreau does not dispute that the plea agreement plainly states the terms and scope of the waiver. On the second factor -- the sufficiency of the district court's plea colloquy -- Boudreau contends that the court should not give effect to the appeal waiver based on this factor in part because the district court failed to

inform him that he did not have a right to withdraw his plea, in violation of Rule 11(c)(3)(B), and failed to inform him about the nature of each charge to which he was pleading, in violation of Rule 11(b)(1)(G). Regarding the district court's failure to inform Boudreau about his right to withdraw his plea, we do not see how this error, even if true, has any bearing on whether Boudreau was adequately informed about his right to appeal his conviction and sentence, and we therefore do not see how this error is relevant to the second Teeter factor.

As to Boudreau's claim that the district court failed to inform him about the nature of each charge to which he was pleading, a court's failure in this regard could affect a defendant's ability to "intelligently" waive his right to appeal his conviction and sentence on those charges and is thus relevant to the Teeter analysis. See Morillo, 910 F.3d at 2. However, Boudreau does not sufficiently develop his argument regarding this error; although he argues that the prosecutor "provided the court with an incorrect explanation" regarding the charges against him, Boudreau does not provide any argument for how exactly the prosecutor erred and how that error affected Boudreau's intelligent waiver of his right to appeal. We therefore treat this argument as insufficiently developed and, thus, waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). Thus,

the two errors Boudreau asserts, which he casts as Rule 11 errors,[1] provide no support for the argument that the district court's interrogation was insufficient to show that Boudreau waived his right to appeal "freely and intelligently." See Morillo, 910 F.3d at 2.

Having dispensed with Boudreau's Rule 11-based challenges to the validity of his appeal waiver, we turn to the other arguments he makes regarding the second Teeter factor. We do not find them persuasive. Boudreau's principal argument is that the plea agreement's language is complex, and his answers at the plea colloquy were brief and thus insufficient to establish full understanding of the plea. These concerns, which we have never identified as factors that can support relief on this claim, are minimal, given that Boudreau was represented by counsel -- whose duties included explaining any complexities in the plea agreement to Boudreau -- throughout plea negotiations and at his change of plea hearing. Further, Boudreau stated at his plea hearing that he was fully satisfied with the performance of his

---

[1] Insofar as Boudreau argues that Rule 11 errors not only affected his ability to intelligently waive his right to appeal but invalidated the plea agreement itself, with the effect of freeing him not only from the appeal waiver but from all other aspects of the agreement reached as part of his plea, this challenge fails under plain error review, as Boudreau has not shown "a reasonable probability that, but for the error, he would not have entered the plea." United States v. Dominguez-Benitez, 542 U.S. 74, 83 (2004); see United States v. Rivera-Clemente, 813 F.3d 43, 47 (1st Cir. 2016) (same).

counsel, and he has not contested the quality of his representation. See United States v. Rivera-Clemente, 813 F.3d 43, 48–49 (1st Cir. 2016); United States v. Hernandez-Maldonado, 793 F.3d 223, 226 (1st Cir. 2015). Additionally, during the colloquy, Boudreau was again afforded the opportunity to consult with counsel and to ask the court to further explain anything that he did not understand. Consequently, Boudreau has failed to carry his burden to establish that his appeal waiver was not entered "freely and intelligently." Morillo, 910 F.3d at 2.[2]

Our final task is to determine whether, per the third Teeter factor, denying Boudreau his appeal would "work a miscarriage of justice." 257 F.3d at 25. Whether a district court's error constitutes a miscarriage of justice is "more a concept than a constant," and the factors that we may weigh include "the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent

---

[2] Boudreau separately contends in his counseled brief to us that he did not "freely and intelligently" waive his right to appeal the suspicionless search condition imposed on him as part of his supervised release because he could not have reasonably foreseen that it would be imposed and that it was, in any event, outside the scope of his appeal waiver. But, given the terms of his plea agreement and colloquy, these contentions are meritless under our precedent. See United States v. Santiago, 769 F.3d 1, 7-8 (1st Cir. 2014).

- 11 -

to which the defendant acquiesced in the result." Id. at 26. We will reverse on this factor "only in 'egregious cases,'" not in "garden-variety" sentencing disputes. Morillo, 910 F.3d at 4 (quoting Teeter, 257 F.3d at 25-26). As we have explained, for the imposition of a condition of supervised release to result in a "miscarriage of justice," the condition must be "so lacking in rationality or so wholly unrelated to legitimate sentencing purposes as to necessitate invalidating [the] waiver of appeal." United States v. Rivera-López, 736 F.3d 633, 636 (1st Cir. 2015).

Here, Boudreau has alleged no error sufficiently egregious for us to consider piercing his waiver of appeal. We will comment briefly on Boudreau's assertions that certain conditions of supervised release amount to a miscarriage of justice. Specifically, Boudreau challenges Special Condition 6, which permits the Probation Officer to search his residence and property without reasonable suspicion of a violation; Special Condition 7, which restricts him from accessing devices that are capable of connecting to the internet; and Special Condition 8, which restricts his ability to contact children, either male or female, under the age of 18.

Each of these challenges fails on plain error review, as Boudreau does not identify precedent that would provide a basis for concluding that it would be clear or obvious error to impose any of these conditions. See Rivera-López, 736 F.3d at 63.

Indeed, we have permitted the imposition of a suspicionless search condition in another context as reasonably related to the goals of supervised release, see United States v. Windle, 35 F.4th 62, 67-68 (1st Cir. 2022), and three of our sister circuits have upheld the imposition of similar conditions on child pornography offenders, see United States v. Sulik, 807 F. App'x. 489, 492-93 (6th Cir. 2020); United States v. Rosenthal, 295 F. App'x 985, 986 (11th Cir. 2008); United States v. White, 244 F.3d 1199, 1208 (10th Cir. 2001). In addition, we have upheld on plain error review both a supervised release condition barring a child sex offender's ability to have contact with minors, see United States v. Pabon, 819 F.3d 26, 29, 34-35 (1st Cir. 2016), and a restriction on a child pornography offender's ability to access the internet, see United States v. Velez-Luciano, 814 F.3d 553, 560 (1st Cir. 2016). Thus, Boudreau has not met his burden to show that the imposition of the conditions that he challenges resulted in a miscarriage of justice in his case.

We need not go further.[3] The district court's sentence was supported by meticulous factfinding and a clear consideration

---

[3] Boudreau contests the validity of the plea agreement on a number of additional grounds in his pro se supplemental brief. To the extent these arguments were not waived, they are meritless. The record does not suggest that the plea agreement was procedurally invalid or lacked consideration, that any of the prosecutor's actions were taken in bad faith or in breach of the agreement, or that any of the supervised release conditions imposed on Boudreau were outside the scope of the appeal waiver. Because

of the statutorily required factors, and falls squarely within the scope of what courts within and outside this circuit have permitted.  There has been no miscarriage of justice.  We find that Boudreau's waiver of appeal is valid, enforceable, and bars our further consideration of his arguments.  We thus **dismiss** and, as to the arguments addressed in Footnote 1, **affirm** as there was no plain error.

---

counsel declined to make these arguments, we need not address their deficiencies in any further detail.