# United States Court of Appeals
## For the First Circuit

No. 22-1390

UNITED STATES,

Appellee,

v.

SEAN J. TRAHAN,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, Jr., U.S. District Judge]

Before

Montecalvo, Selya, and Lynch,
Circuit Judges.

William W. Fick, with whom Fick & Marx LLP was on brief, for appellant.
Alexia R. De Vincentis, Assistant United States Attorney, with whom Joshua S. Levy, Acting United States Attorney, was on brief, for appellee.

August 8, 2024

**MONTECALVO, Circuit Judge.** In October 2021, defendant-appellant Sean J. Trahan pleaded guilty to possession and knowing access with intent to view child pornography, both in violation of 18 U.S.C. § 2252A(a)(5)(B). The district court later sentenced Trahan to 126 months' imprisonment -- applying a sentencing enhancement based on Trahan's prior state conviction for possession of "visual material of child depicted in sexual conduct" that the court determined required the imposition of a ten-year mandatory minimum under § 2252A(b)(2).[1] On appeal from his sentence, Trahan insists that his state conviction should not have triggered the ten-year mandatory minimum because the enhancement provision of § 2252A(b)(2) cannot cover state

---

[1] We note that the terminology used across the states to describe "child pornography" is wide-ranging and many states have opted to use terms other than "child pornography." See, e.g., Utah Code Ann. § 76-5b-201(2) (criminalizing possession of "child sexual abuse material"); Ala. Code § 13A-12-191 (criminalizing "[d]issemination or public display of obscene matter containing visual depiction of persons under 17 years of age involved in obscene acts"); Alaska Stat. Ann. § 11.61.127 (criminalizing "[p]ossession of child pornography"); Ariz. Rev. Stat. Ann. § 13-3553 (criminalizing possession of "visual depiction" of "sexual exploitation of a minor"); Ark. Code Ann. § 5-27-304 (criminalizing possession of images "depicting sexually explicit conduct involving a child"); Cal. Penal Code § 311.1 (criminalizing possession of "[o]bscene matter depicting sexual conduct by minor"); cf. EARN IT Act of 2023, S. 1207, 118th Cong. § 6 (2023) (proposing that federal statutes replace the term "child pornography" with "child sexual abuse material," while retaining "the same legal meaning"). Here, we do not attempt to reconcile these many terms and, for clarity's sake, use, as appropriate, the terminology that Congress and the Massachusetts legislature have adopted.

convictions under statutes that criminalize more conduct than § 2252A(b)(2) enumerates.

Trahan also mounts an Alleyne challenge to the district court's imposition of a consecutive six-month sentence pursuant to 18 U.S.C. § 3147 for an offense he committed while on pretrial release. See Alleyne v. United States, 570 U.S. 99 (2013). Trahan argues that, because of the application of the § 2252A(b)(2) mandatory minimum, the additional consecutive sentence based on an uncharged violation violated the Sixth Amendment. For the reasons that follow, we reject Trahan's arguments and affirm the sentence.

## I. Background

As this appeal follows a guilty plea, our recitation of the facts is derived from "the undisputed sections of the presentence investigation report [('PSR')] and the transcripts of the change-of-plea and sentencing hearings." United States v. Spinks, 63 F.4th 95, 97 (1st Cir. 2023) (cleaned up) (quoting United States v. Ubiles-Rosario, 867 F.3d 277, 280 n.2 (1st Cir. 2017)).

In 2015, the Federal Bureau of Investigation ("FBI") initiated Operation Pacifier, a nationwide investigation targeting online access to images of minors engaged in "sexually explicit conduct." 18 U.S.C. § 2256(8). As part of that investigation, the FBI identified an internet protocol ("IP") address associated with Trahan that had been used to access over 400 online

conversations with links to child pornography. The FBI executed a search warrant of the home linked to the IP address and found a computer, which Trahan admitted having exclusive access to and which contained "approximately ten images of child pornography." Following the search, FBI agents arrested Trahan.

On October 27, 2020, a grand jury indicted Trahan on one count of possession of child pornography (count I) and one count of knowing access with intent to view child pornography (count II), both in violation of 18 U.S.C. § 2252A(a)(5)(B).[2] In November, Trahan pleaded not guilty and was released with pretrial conditions.

On September 8, 2021, following up on information from an out-of-state sheriff's office regarding an online chat group that contained child pornography, the FBI executed another search warrant of Trahan's house. This search yielded a tablet computer, which Trahan's pretrial conditions prohibited him from possessing. A search of the tablet revealed online conversations in which another user sent Trahan videos of child pornography. Trahan was then arrested and held in federal custody.

---

[2] This was the second indictment related to the 2015 arrest. Trahan was originally indicted in November 2015. In the first proceeding, the district court granted Trahan's motion to dismiss the indictment for violations of the Speedy Trial Act, 18 U.S.C. §§ 3161 et seq., and dismissed the case without prejudice.

The government later filed a superseding information that realleged counts I and II and added a second count of possession of child pornography based on the 2021 arrest (count III). Count III did not allege that Trahan committed the offense while on pretrial release nor did it reference 18 U.S.C. § 3147, the statute outlining the penalty for offenses committed while on release. Trahan waived his right to an indictment, consented to prosecution by information, and pleaded guilty to all three counts without a plea agreement.

During the change-of-plea hearing, the government listed the range of possible criminal penalties, providing that each count "carries a mandatory minimum of ten years in prison because . . . Trahan has a prior state . . . conviction" for possession of visual material of child depicted in sexual conduct. Specifically with respect to count III, the government noted that Trahan committed the offense while on pretrial release, thus requiring additional imprisonment that "shall be consecutive to any other sentence of imprisonment" under § 3147. The government also summarized the facts that would support a conviction for count III. In particular, the government explained that when "the FBI obtained a search warrant for . . . Trahan's house and executed it on September 8, 2021," based on information regarding online child pornography sharing, "Trahan had been out on bail." After the

government provided the summary, Trahan agreed that it was a true description of the offenses.

As alluded to, these were not Trahan's first offenses involving images of children engaged in sexual conduct. In 2006, Trahan was convicted in Massachusetts state court of "possession of visual material of child depicted in sexual conduct" in violation of Mass. Gen. Laws ch. 272, § 29C ("§ 29C"). Accordingly, the PSR that the United States Probation Office for the District of Massachusetts ("Probation") prepared in advance of sentencing reflected a criminal history category of I and a mandatory minimum of ten years' incarceration for each count pursuant to 18 U.S.C. § 2252A(b)(2). The PSR also noted that Trahan was "out on bail" when the FBI executed the September 8, 2021 search warrant and subsequently arrested Trahan. Because Trahan committed the offense while on pretrial release, the PSR provided that § 3147 compelled an additional sentence that would not exceed ten years. The PSR reported a United States Sentencing Guidelines ("guidelines") range of 121 to 151 months.

Trahan objected to the imposition of the mandatory minimum, arguing that "the prior conviction is not necessarily one relating to child pornography as that term is defined under federal law" because § 29C "criminalizes possession of images containing content that is not criminalized under the definitions in 18 U.S.C. § 2256 governing federal child pornography offenses." In

response, Probation explained that it was "not aware of any First Circuit precedent that has found [§ 29C] to be overbroad in the context of . . . § 2252A" but deferred resolution of the objection to the court. Trahan also "object[ed] to the imposition of any consecutive term of imprisonment under . . . § 3147 arising from" count III because it "would necessarily have the effect of increasing the mandatory minimum without a separate charge" in violation of Alleyne, 570 U.S. 99. Probation disagreed and made no change to the report. Trahan did not object to any of the factual allegations about the September 8, 2021 search warrant.

Also prior to sentencing, the parties filed sentencing memoranda for the district court's consideration. In its memorandum, the government agreed with Probation that the guidelines range was 121 to 151 months and requested a sentence of 126 months -- "120 months concurrent for" each of the three counts and "6 months consecutive" for Trahan's violation of his pretrial release conditions. In addressing the applicability of the mandatory minimum, the government relied on the "relating to" clause contained in § 2252A(b)(2), arguing that it "allows for [a] state . . . offense to be [a] close but not necessarily exact" match to the federal offense. As for the Alleyne challenge, the government emphasized that "[t]he application note for [guidelines] § 3C1.3 calls for using the § 3147 enhancement only as a means of calibrating where within the [guidelines] for the

underlying offense to sentence the defendant" and that it was recommending a sentence at the low end of the guidelines.

For his part, Trahan agreed that the guidelines range was 121 to 151 months. Assuming the district court denied his objection to application of the mandatory minimum and his Alleyne challenge, he requested a sentence of 121 months' imprisonment, 120 months for the three counts and one month consecutive pursuant to § 3147. But if the district court were to sustain his objections, he asked for a sixty-month sentence. He then reiterated his argument that § 2252A's enhancement provision could not apply in his case because § 29C's definition of "visual material of child depicted in sexual conduct" is broader than the federal definition of "child pornography." Thus, he argued that his prior § 29C conviction did not qualify as a "prior conviction" under § 2252A. Finally, he argued that the imposition of a sentence under § 3147 in addition to the mandatory minimum would increase the mandatory minimum absent a separate charge, thereby violating his Sixth Amendment rights.

At the sentencing hearing, Trahan again objected to the imposition of the ten-year mandatory minimum and the additional sentence under § 3147, relying on the arguments made in his sentencing memorandum. Through counsel, he requested "the lowest [sentence] the [district] court c[ould] impose legally."

- 8 -

Before issuing the sentence, the district court determined that the ten-year mandatory minimum applied, explaining that it agreed with "the majority of circuits that have dealt with the question," and then explained that it was not persuaded by Trahan's Alleyne challenge. The district court then sentenced Trahan to a term of 120 months on each count, to be served concurrently, and to an additional six months pursuant to § 3147, to be served consecutively, for a total of 126 months' imprisonment. Trahan timely appealed.

## II. Discussion

Now, Trahan again raises his challenge to the district court's application of § 2252A(b)(2)'s mandatory minimum and its imposition of the additional § 3147 sentence. We address each in turn, and, for the reasons that follow, we reject both claims. Accordingly, we affirm the district court's 126-month sentence.

### A. State-Conviction Sentence Enhancement

Trahan argues that Massachusetts' law criminalizing possession of "visual material of child depicted in sexual conduct," § 29C, is too broad to trigger the enhancement because "[i]t criminalizes possession of material that does not necessarily constitute child pornography as defined in Chapter 110 of the U.S. Code."[3] His argument largely turns on whether the

---

[3] In his opening appellate brief, Trahan also argued that § 29C is too broad to trigger the enhancement because "it

- 9 -

phrase "relating to" as used in the statute has a broadening effect or not -- he argues that it does not.  Thus, he contends that his Massachusetts state conviction cannot trigger application of the § 2252A(b)(2) enhancement.  The government argues that the phrase carries its usual broadening effect such that Trahan's Massachusetts conviction triggered the enhancement.

We review this preserved challenge de novo, ultimately agreeing with the government's interpretation.  See United States v. Rivera-Morales, 961 F.3d 1, 15 (1st Cir. 2020) (holding that in sentencing appeals, "we review preserved claims of error for abuse of discretion" but "review . . . questions of law . . . de novo"); United States v. Kennedy, 881 F.3d 14, 19 (1st Cir. 2018) (explaining that whether statutory mandatory minimum applied is a legal question to be reviewed de novo).

We begin by setting forth the relevant statutory text. First, the enhancement itself.  In relevant part, § 2252A(b)(2) provides that:

> Whoever violates . . . subsection (a)(5)
> [(knowing possession of access with intent to

criminalizes an act -- purchase -- that [doe]s not necessarily entail one of the types of conduct enumerated in [§] 2252A(b)(2)." However, Trahan abandoned this argument in his reply brief, acknowledging that "[a] prior offense for 'purchase' of [visual material of child depicted in sexual conduct] is, indeed, an offense 'relating to' the 'production, possession, receipt, mailing[,] sale, distribution, shipment[,] or transportation' of child pornography." (quoting § 2252A(b)(2)).  Thus, we need not consider this argument or address the government's contention that it was not preserved for review.

- 10 -

view child pornography)] shall be fined under this title or imprisoned not more than [ten] years, or both, but, . . . if such person has a prior conviction . . . under the laws of any State relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward, or the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography, such person shall be fined under this title and imprisoned for not less than [ten] years nor more than [twenty] years.

(Emphases added). Section 2256 of Title 18, which applies to all of Chapter 110, including § 2252A, defines "child pornography" as "any visual depiction" of a minor engaged in "sexually explicit conduct," also specifying the types of depictions and types of minor involvement (i.e., actual or apparent use of a minor) that qualify as child pornography. See 18 U.S.C. § 2256(8). As will become clear, the federal provision defines "sexually explicit conduct," the essential component of the definition of child pornography, relatively narrowly. See id. Under the federal definition, "sexually explicit conduct" is limited to:

> [A]ctual or simulated --
> (i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;
> (ii) bestiality;
> (iii) masturbation;
> (iv) sadistic or masochistic abuse; or
> (v) lascivious exhibition of the anus, genitals, or pubic area of any person.

Id. § 2256(2)(A).

Section 29C prohibits the knowing purchase or possession of "visual material of child depicted in sexual conduct,"[4] similarly specifying the types of depictions that qualify as prohibited material.  The Massachusetts statute criminalizes material that depicts a minor who is actually or by simulation:

> (i) . . . engaged in any act of sexual intercourse with any person or animal;
> (ii) . . . engaged in any act of sexual contact involving the sex organs of the child and the mouth, anus or sex organs of the child and the sex organs of another person or animal;
> (iii) . . . engaged in any act of masturbation;
> (iv) . . . portrayed as being the object of, or otherwise engaged in, any act of lewd fondling, touching, or caressing involving another person or animal;
> (v) . . . engaged in any act of excretion or urination within a sexual context;
> (vi) . . . portrayed or depicted as bound, fettered, or subject to sadistic, masochistic, or sadomasochistic abuse in any sexual context;
> (vii) depicted or portrayed in any pose, posture or setting involving a lewd exhibition of the unclothed genitals, pubic area, buttocks or, if such person is female, a fully or partially developed breast of the child.

Mass. Gen. Laws ch. 272, § 29C.

Though the parties agree that § 29C covers "a broader swath of conduct" than § 2252A, we specifically note the main area

---

[4] Trahan seems to think that there is something significant about the Massachusetts General Assembly's decision to refrain from using the term "child pornography," but he fails to explain how this should impact our analysis.

of divergence between the two laws: the descriptions in subsections (iv), (v), and (vii) of § 29C clearly cover depictions that would not be covered by § 2252A (per the definitions provided in § 2256(2)(A)). Thus, we accept Trahan's contention that § 29C is broader than its federal counterpart.

Thus, we turn to the question before us, which is, at its core, what role the phrase "relating to" plays when it comes to determining whether a state conviction triggers the federal sentence enhancement. We conclude that the phrase here takes on its usual broad meaning and its inclusion means that a state definition need not be a perfect match with the federal definition of child pornography in order to trigger application of the mandatory minimum. Rather, the state crime must merely be "related to" the federal definition of child pornography. In so concluding, we join four of the six circuits to have already considered this question.[5] See United States v. Bennett, 823 F.3d 1316, 1322 (10th Cir. 2016) (concluding that "the offense need only stand in some relation to, pertain to, or have a connection with" child pornography to trigger § 2252A(b)(2)'s enhancement (cleaned up));

---

[5] As indicated in each case's parenthetical, many of these circuit opinions addressed 18 U.S.C. § 2252's identically worded enhancement for "certain activities relating to material involving the sexual exploitation of minors." 18 U.S.C. § 2252 (emphasis added); see id. § 2252(b)(1). Given the identical operative language, we assume that those circuits would apply the same analysis to § 2252A's enhancement.

United States v. Liestman, 97 F.4th 1054, 1065 (7th Cir. 2024) (analyzing identical provision in 18 U.S.C. § 2252 and concluding "that 'relating to' . . . brings within the ambit of the enhancement any prior offense that categorically bears a connection with . . . 'the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography'"); United States v. Portanova, 961 F.3d 252, 256 (3d Cir. 2020) (analyzing § 2252's enhancement and concluding that "the phrase 'relating to' must be read expansively and encompasses crimes other than those specifically listed in the federal statutes" (cleaned up)); United States v. Mayokok, 854 F.3d 987, 992-93 (8th Cir. 2017) (analyzing § 2252's enhancement and concluding that "'relating to' carries a broad ordinary meaning" and that state and federal statutes need not "criminalize exactly the same conduct"). But see United States v. Reinhart, 893 F.3d 606, 616 (9th Cir. 2018) (analyzing § 2252 and concluding that "relating to" must be read narrowly and requiring a categorical match between state definition and federal definition of child pornography); United States v. Davis, 751 F.3d 769, 776-77 (6th Cir. 2014) (concluding that state conviction did not trigger § 2252's enhancement because state's definition was broader than federal definition of child pornography).

At first, Trahan asked us to conclude that, in order for a state crime to "relate to" child pornography, there must be an

exact match between the state definition and the federal definition of child pornography -- or that the state definition cover <u>no more</u> <u>than</u> the federal definition of child pornography. Seeming to realize that this construction would be problematic because it wholly ignores the "relating to" phrase that Congress included in the provision, Trahan shifted gears in his reply. Trahan argued there that "relating to" referred only to the actions listed in § 2552A(b)(2) -- "production, possession, receipt, mailing, sale, distribution, shipment, or transportation" -- and not to the object -- the federal definition of child pornography. Thus, in this formulation, the action a state law criminalizes need not match the actions listed in § 2252A(b)(2), but the state definition cannot be more expansive than the federal definition of child pornography. Neither argument is availing.

First, Trahan's argument that "relating to" applies only to the listed actions and not to "child pornography" is both forfeited and waived because he did not raise the argument below, see <u>In re Redondo Const. Corp.</u>, 678 F.3d 115, 121 (1st Cir. 2012) ("It is black-letter law that arguments not presented to the trial court are, with rare exceptions, forfeit on appeal."), and because he raised it for the first time in his reply brief, see <u>United</u> <u>States</u> v. <u>Casey</u>, 825 F.3d 1, 12 (1st Cir. 2016) ("[A]rguments raised for the first time in an appellate reply brief [are]

ordinarily deemed waived.").[6]  However, even affording Trahan the benefit of plain error review, his argument cannot prevail.  To succeed under that standard, Trahan must establish "four elements: '(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings.'"  United States v. Lessard, 35 F.4th 37, 42 (1st Cir. 2022) (quoting United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001)).  Trahan cannot shoulder this heavy burden.

Indeed, we can quickly dismiss Trahan's contention that "relating to" applies only to the actions listed in § 2252A(b)(2) ("production, possession, receipt, mailing, sale, distribution, shipment, or transportation") and not the federal definition of child pornography.  There is no textual indication that "relating to" refers exclusively to the listed actions, and Trahan has provided no compelling explanation as to why we should so conclude.  In any event, the series-qualifier canon of statutory

---

[6] At oral argument, Trahan's counsel contended that this was simply an "expansion" of his arguments below and a natural response to the government's responsive brief.  We disagree with this description as this argument was self-evident from the beginning and is not a natural counter to the government's position.  Nor is it a reframing or expansion of his arguments presented below.  Trahan's reply brief presents a wholly new construction of § 2252A that rests on the abandonment of an earlier argument.  See supra note 3.

interpretation is instructive here.  See Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 147 (2012).

Per that canon, "[w]hen there is a straightforward, parallel construction that involves all nouns or verbs in a series, a prepositive or postpositive modifier normally applies to the entire series."  Id. at 147.  As with any canon of statutory interpretation, the series-qualifier canon aims to capture "the most natural reading of a sentence," Facebook, Inc. v. Duguid, 592 U.S. 395, 403 (2021), but the reading resulting from the canon "is not an absolute and can assuredly be overcome by other indicia of meaning," Barnhart v. Thomas, 540 U.S. 20, 26 (2003).  Using this canon, we naturally read § 2252A(b)(2) as providing that the enhancement is triggered by a prior conviction "relating to" each and every one of the listed actions in the statute.  The result is any conviction that is related to the production of child pornography or related to the possession of child pornography (and so on with respect to the receipt of child pornography, the mailing of child pornography, the sale of child pornography, the distribution of child pornography, the shipment of child pornography, or the transportation of child pornography) would call for applying the sentencing enhancement.  As we will explain, the statutory context and legislative history likewise compel us to conclude that "relating to" modifies both the listed action and the statutorily defined noun (child pornography).

- 17 -

Thus, we turn to Trahan's original argument and the focus of this appeal: does "relating to" retain its ordinary broad meaning? Here, we begin with the important presumption of statutory construction that "unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, and common meaning." Perrin v. United States, 444 U.S. 37, 42 (1979). It is well established that the phrase "relating to" has a broad meaning. See Silva v. Garland, 27 F.4th 95, 103 (1st Cir. 2022) ("[T]he ordinary meaning of the phrase 'relating to' is 'a broad one . . . .'" (quoting Morales v. Trans World Airlines, Inc., 504 U.S. 374, 383-84 (1992))); United States v. Winczuk, 67 F.4th 11, 17 (1st Cir. 2023) ("[W]hen asked to interpret statutory language including the phrase 'relating to,' . . . [the Supreme] Court has typically read the relevant text expansively." (quoting Lamar, Archer & Cofrin, LLP v. Appling, 584 U.S. 709, 717 (2018)) (alterations in original)).

In Mellouli v. Lynch, however, the Supreme Court explained that "relating to" does not always have a broadening effect and that statutory context and history can counsel in favor of a narrow reading of the phrase. See 575 U.S. 798, 811-12 (2015). Trahan relies in part on Mellouli, arguing that contextual indicia require construing "relating to" narrowly here. In Mellouli, the Supreme Court analyzed a statute that subjected a non-citizen to deportation based on a "convict[ion] of a violation

- 18 -

of . . . any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in [the federal Controlled Substances Act])." Id. at 801 (emphasis added) (quoting 8 U.S.C. § 1227(a)(2)(B)(i)). The petitioner was convicted of a state offense for possession of drug paraphernalia -- specifically, a sock that concealed a substance categorized as a controlled substance under state law but not federal law. See id. at 803-04. The Court held that § 1227's use of "relating to" did not have its ordinary broad meaning but instead warranted application of the strict categorical approach such that a state crime must criminalize no more than the federal law in order to trigger removal. See id. at 803. In particular, the Court pointed to the statute's "historical background" as evidence that "Congress and the [Board of Immigrations Appeals] have long required a direct link between [a non-citizen's] crime of conviction and a particular federally controlled drug." Id. at 812. Without such a link in the petitioner's case, the Court concluded that removal was only appropriate where a non-citizen had been convicted of a drug offense for a drug listed in the federal Controlled Substances Act. See id. at 813.

Trahan contends that Mellouli is controlling here. But unlike 29 U.S.C. § 1227, the statute at issue in Mellouli, the text and context of § 2252A are entirely consistent with "relating to" having a broadening effect rather than a narrowing one.

To begin, the Court in Mellouli acknowledged that the phrase "relating to" generally has a broadening effect, but the Court also made clear that "relating to" does not have a static statutory definition; rather, context, which includes legislative history, may dictate the extent to which the term broadens or narrows the statute's coverage. See id. at 811-12. So Trahan is incorrect to read Mellouli as establishing a new definition of the phrase.

Here, the context of § 2252A points toward using the term's usual broadening effect. First, the history of § 2252A and surrounding statutes evinces Congress's intent to expand criminal liability for child-pornography offenses and to widen the breadth of conduct that can trigger mandatory minimums for federal crimes involving child pornography. See, e.g., Child Protection Act of 1984, Pub. L. No. 98-292, §§ 2-5, 98 Stat. 204, 204-05 (1984) (removing "for the purpose of sale or distribution for sale" and "for pecuniary profit" from § 2252 to ensure both commercial and noncommercial conduct covered); Crime Control Act of 1990, Pub. L. No. 101-647, § 323(a)(4), 104 Stat. 4789, 4818-19 (1990) (adding simple possession to § 2252); Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 193-322, § 160001(e), 108

- 20 -

Stat. 1796, 2036-37 (1994) (adding attempt and conspiracy to § 2252).[7]

In part, these efforts sought to address the "misconception" that child-pornography offenses "are not serious" and are, accordingly, subject to lenient sentences. See, e.g., H.R. Rep. No. 108-66, at 51 (2003). An expansive reading of § 2252A(b)(2)'s "relating to" neatly aligns with Congress's intent to dispel such a misconception. Indeed, Trahan's reading of the statute makes little sense given that, at the time this provision became law, a majority of states had broader definitions of what constitutes child pornography than the then-newly-enacted federal definition of child pornography.[8] Trahan's approach would thus

---

[7] We note here that "the difference [between § 2252 and § 2252A] is that the former statute is directed only to depictions of actual minors while the latter includes [minors] but extends also to those who only appear to be minors or are fictitious creations but appear real." United States v. Hilton, 257 F.3d 50, 57 (1st Cir. 2001).

[8] When the pertinent language was added to § 2252A(b)(2) in 1996, at least thirty-one states had definitions of material depicting children engaged in sexual conduct that were broader than the federal definition of child pornography. See § 2252A(b)(2) (1996) (adding state conviction "relating to" child pornography to enhancement provision); § 2256(8) (current version substantially similar to that in effect in 1996). See also 1990 Alaska Sess. Laws Ch. 161, § 1 (including "lewd touching of" a person or child's "breast"); 1996 Ariz. Legis. Serv. 601 (including "defecation or urination"); 1995 Ark. Acts 5803 (including "[l]ewd exhibition of . . . the breast of a female"); 1996 Cal. Stat. 7372 (including "[d]efecation or urination"); 1979 Colo. Sess. Laws 737-39 (including "touching . . . clothed or unclothed . . . buttocks [or] breasts"); 61 Del. Laws 575 (1977) (including "nudity"); 1991 Fla. Laws 262 (including "contact with . . . clothed or unclothed . . . buttocks[] or . . . breast"); 1987 Ga.

- 21 -

Laws 1165 (including "[p]hysical contact . . . with . . . buttocks[] or . . . nude breasts"); 1992 Idaho Sess. Laws 440 (including touching of buttocks or breasts and display of breasts); 1994 Ill. Laws 2818 (including "lewd exhibition of the unclothed . . . buttocks[] or . . . breast"); 1995 Ind. Acts 2377 (including "any fondling or touching of a child . . . intended to arouse or satisfy the sexual desires of either the child or the other person"); 1989 Iowa Acts 538 (including "nudity of a minor"); 1986 Ky. Acts 1147 (including "excretion" and "exposure . . . of the unclothed or apparently unclothed . . . buttocks[] or the female breast"); 1988 Mass. Acts 755-58 (including "exhibition in a state of nudity"); 1994 Mich. Pub. Acts 2150(including "touching . . . clothed or unclothed . . . buttocks[] or . . . breasts" and "passive sexual involvement"); 1983 Minn. Laws 540 (including "[p]hysical contact or simulated physical contact with the clothed or unclothed . . . buttocks . . . or the breasts"); 1995 Miss. Laws 488 (including "[f]ondling or other erotic touching of the . . . buttocks . . . or breast"); 1994 Mo. Laws 1133 (including "any touching of . . . the breast . . . [or any such touching through the clothing]" (alteration in original)); 1995 Mont. Laws 533 (including "lewd exhibition of the . . . breasts . . . or other intimate parts" and "defecation [and] urination"); 1986 Neb. Laws 1018 (including "display of . . . the human female breasts"); 1995 Nev. Stat. 950 (including "excretion"); 1995 N.J. Laws 599 (including "[n]udity"); 1993 N.C. Sess. Laws 587 (including "[u]ncovered, or less than opaquely covered . . . buttocks[] or the nipple or any portion of the areola of the human female breast"); 1996 Ohio Laws 5001 (including "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person"); 1984 Okla. Sess. Laws 336 (including "any act of excretion in the context of sexual activity"); 1995 Pa. Legis. Serv. 991 (including "nudity"); 1987 S.C. Acts 1137 (including "touching . . . of the clothed or unclothed . . . buttocks . . . or the clothed or unclothed breasts"); 1990 Tenn. Pub. Acts 940 (including "physical contact with or touching of . . . clothed or unclothed . . . buttocks[] or breasts"); 1995 Va. Acts 1775 (including "nudity") & 1976 Va. Acts 593 (defining "nudity" to include "a state of undress so as to expose the . . . buttocks with less than a full opaque covering[] or the showing of the female breast with less than a fully opaque covering of any portion thereof below the top of the nipple"); 1989 Wa. Sess. Laws 161 (including "defecation or urination"); 1986 W. Va. Acts 1359 (including "[e]xcretory functions in a sexual context").

preclude the government from applying the enhancement in any instance where the state law included a broader definition than the federal statute -- flying in the face of clear congressional intent.

Finally, unlike Mellouli, "a broad reading of the enhancement provision does not stretch [§ 2552A] 'to the breaking point.'"[9] Bennett, 823 F.3d at 1323 (quoting Mellouli, 575 U.S. at 811). Thus, Mellouli does not require a narrow reading of § 2252A(b)(2)'s "relating to," and we conclude that it carries its usual broad meaning. We thus join the other courts of appeals that have read Mellouli as turning not on the definition of "relating to" but on the particular removal statute's surrounding

---

[9] Other courts have found significant that § 2252A has no "link" to § 2256's definition of child pornography. In other words, courts have emphasized that § 2252A(b)(2) does not cite to the specific subsection of § 2256 that defines child pornography. See, e.g., United States v. Bennett, 823 F.3d 1316, 1323 (10th Cir. 2016). In Bennett, the Tenth Circuit emphasized that the statute at issue in Mellouli explicitly "linked" to the federal definition, thereby creating an explicit limiting principle for the phrase "relating to" vis-à-vis federal drug regulations. Id. (citing Mellouli v. Lynch, 575 U.S. 798, 808 n.9 (2015))). We find little to no significance in the fact that § 2252A(b)(2) does not specifically cite to § 2256 as § 2256 makes clear that it applies to all statutes within Chapter 110 (where § 2252A also appears). The statute at issue in Mellouli, however, was the Immigration and Nationality Act (contained in Title 8) and the referenced statute, the Controlled Substances Act (contained in Title 21), was in an entirely different title. Mellouli, 575 U.S. at 801-02. Thus, the statute had to provide a direct "link" to the controlling definition. Here, the federal child pornography definition similarly provides a controlling definition, but that does not counsel in favor of a narrower reading of the phrase "relating to" especially given the text and context of the statute.

text and history.  See United States v. Kraemer, 933 F.3d 675, 681 (7th Cir. 2019); United States v. Sullivan, 797 F.3d 623, 639-40 (9th Cir. 2015); Bennett, 823 F.3d at 1322-23.

Thus, having decided that § 2252A(b)(2)'s enhancement can be triggered by a broader state law because the phrase "relating to" has a broadening effect, we turn to whether § 29C's definition of "visual material of child depicted in sexual conduct" categorically relates to "child pornography" as defined by federal law.  We need not spend much time on whether the Massachusetts definition of "visual material of child depicted in sexual conduct" relates to the federal definition of "child pornography" as the core purposes of the statutes are the same -- both address the market for images of sexual abuse of children.  Furthermore, Trahan makes no argument that the Massachusetts definition is not related to the federal definition -- he relies only on his argument that "relating to" does not extend past the listed actions and does not carry its usual broadening effect.

For these reasons, we affirm the district court's application of § 2252A(b)(2)'s 10-year mandatory minimum.

## B. Alleyne Challenge

Trahan next argues that, if we affirm the district court's imposition of the mandatory minimum, the sentencing court's additional imposition of the six-month consecutive sentence for the offense Trahan committed while on release violated

his Sixth Amendment rights.  See Alleyne, 570 U.S. at 117.  Under Alleyne, "any fact leading to the imposition of a mandatory minimum sentence must be found by a jury beyond a reasonable doubt." Butterworth v. United States, 775 F.3d 459, 461 (1st Cir. 2015) (emphasis added).

Trahan contends that, because he was not charged with violating § 3147 -- but was instead charged with an additional possession charge -- the district court's decision to impose an additional six-month sentence pursuant to § 3147 violated Alleyne. It is not clear whether Trahan is arguing that § 3147, the enhancement statute, had to be included as a separate charge in the information or whether he is arguing that the mere fact that he committed the second possession violation while on pretrial release had to be charged.  To the extent Trahan seeks to argue the former, his argument fails on its face.  Alleyne deals with uncharged facts, not uncharged enhancement statutes.  Moreover, Trahan has failed to support or fully explain this argument, and, so, we treat it "as insufficiently developed and, thus, waived." United States v. Boudreau, 58 F.4th 26, 32 (1st Cir. 2023).  To the extent Trahan seeks to argue the latter, we conclude that any error was harmless.[10]

_____

[10] For the purposes of harmless error review, we assume without deciding that the additional sentence violated Alleyne.  Further, we need not decide whether, as the government contends, that, even assuming that § 3147 effectively raised the mandatory minimum,

Preserved <u>Alleyne</u> challenges are reviewed de novo.  <u>See</u>

<u>United States</u> v. <u>Gonzalez</u>, 981 F.3d 11, 16 (1st Cir. 2020).  In

this Circuit, it is well established that <u>Alleyne</u> challenges are

subject to harmless error review.  <u>See</u> <u>United States</u> v. <u>McIvery</u>,

806 F.3d 645, 649-50 (1st Cir. 2015); <u>see also</u> <u>Erlinger</u> v. <u>United</u>

<u>States</u>, 602 U.S. --, 144 S. Ct. 1840, 1860 (2024) (Roberts, C.J.,

concurring); <u>id.</u> at 1866 (Jackson, J., dissenting).

> Where, as here, the [claimed] error is of
> constitutional dimension and has been
> preserved below, the harmless error standard
> requires the government to "prove that the
> error was harmless beyond a reasonable doubt,
> or, put another way, that it can fairly be
> said beyond any reasonable doubt that the
> assigned error did not contribute to the
> result of which the appellant complains."

<u>McIvery</u>, 806 F.3d at 650 (quoting <u>United States</u> v. <u>Pérez-Ruiz</u>, 353

F.3d 1, 17 (1st Cir. 2003)).  When reviewing <u>Alleyne</u> challenges

for harmless error, "overwhelming evidence" of the uncharged fact

at issue "generally serves as a proxy for determining whether the

<u>Alleyne</u> error contributed to the result."  <u>Id.</u> at 650-51 (quoting

<u>United States</u> v. <u>Morris</u>, 784 F.3d 870, 874 (1st Cir. 2015)).  Put

simply, the question under harmless error is whether there is

"overwhelming evidence," <u>id.</u> at 650, of the uncharged fact -- here,

whether Trahan committed count III while on pretrial release.[11]  If

_____

<u>Almendarez-Torres</u> v. <u>United States</u>, 523 U.S. 244 (1998), provides
an exception to <u>Alleyne</u>.

[11] Trahan argues that any error could not be harmless because
he received six additional months of incarceration pursuant to

there is overwhelming evidence of that fact, Trahan suffered no violation of his Sixth Amendment rights.

Here, the government has established overwhelming evidence that Trahan committed count III while on pretrial release. Specifically, at Trahan's change-of-plea hearing, the government stated that Trahan was "out on bail" during the September 8, 2021 search, which resulted in count III of the information, and Trahan agreed that this allegation was true. Cf. United States v. Jiminez, 498 F.3d 82, 87 (1st Cir. 2007) (concluding that there was "sufficient factual basis" for defendant's guilty plea where he "conceded" " government's proffered facts . . . to be true"). Further, the PSR also provided that Trahan was "out on bail" when the FBI executed the September 8, 2021 search, and Trahan did not object to that statement either. See United States v. Bregnard, 951 F.2d 457, 460 (1st Cir. 1991) ("Time and again we have held that facts stated in presentence reports are deemed admitted if they are not challenged in the district court."). These two admissions constitute "overwhelming evidence" that Trahan committed count III while on pretrial release. Therefore, any error was harmless.

---

§ 3147, arguing that the additional sentence constitutes harm. This misconstrues the focus of the harmlessness inquiry in Alleyne challenges. As the government points out, Trahan's argument on harmlessness only addresses whether there was an Alleyne error, not whether any Alleyne error was harmless.

## III. Conclusion

For the forgoing reasons, we **<u>affirm</u>** Trahan's sentence.